IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AUGUSTINA RAMOS, | CASE NO. 1:25-cv-1015 |
| Plaintiff, | DISTRICT JUDGE BENITA Y. PEARSON |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Augustina Ramos filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

On October 13, 2022, Ramos filed an application for supplemental security income, alleging a disability onset date of May 1, 2020.[1] Tr. 17, 156. In her application, Ramos claimed disability due to back problems, mental

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

health issues, rheumatoid arthritis, borderline personality disorder, osteoarthritis, major depressive disorder, post-traumatic stress disorder (PTSD), and anxiety. Tr. 184. The Social Security Administration denied Ramos's application and her motion for reconsideration. Tr. 75, 89. Ramos then requested a hearing before an Administrative Law Judge (ALJ). Tr. 106.

In January 2024, an ALJ held a hearing, during which Ramos and a vocational expert testified. Tr. 35–60. In April 2024, the ALJ issued a written decision finding that Ramos was not disabled. Tr. 17–29. The ALJ's decision became final on March 19, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Ramos filed this action on May 17, 2025. Doc. 1. She asserts the following assignment of error:

> Whether the ALJ erred by failing to consider how the claimant's continuous emergency room[] visits and hospitalizations would limit her ability to sustain competitive work.

Doc. 8, at 1.

**Evidence**

*Personal and vocational evidence*

Ramos was 41 years old on her disability application date. Tr. 27. She obtained a general educational diploma and last worked in 2009. Tr. 27, 44.

*Relevant medical evidence*[2]

Ramos has several physical and mental conditions that limit the ability to perform basic work activities, including:

> small right subarticular disc protrusion at L4-5 and left subarticular disc protrusion at L5-S1 with persistent severe canal stenosis and mild progression of right subarticular recess stenosis at L4-5 and radiculopathy; cervical spondylosis with varying levels of foraminal impingement, most evident at C4-5 and C5-6, right greater than left, and borderline/mild cord impingement at C4-5 without severe compression; mild right C7 radiculopathy with no active denervation; rheumatoid arthritis; essential hypertension; mild obstructive sleep apnea; obesity; depression; anxiety; borderline personality disorder; trichotillomania; and posttraumatic stress disorder (PTSD).

Tr. 19.

Ramos was hospitalized from September 18, 2022, through October 4, 2022, after overdosing on muscle relaxers. Tr. 409.

On November 11, 2022, Ramos went to the emergency room complaining of left hip and lower back pain. Tr. 565. She was assessed with left-sided lower back pain with sciatica, treated, and discharged home. Tr. 568–69.

On January 29, 2023, Ramos went to the emergency room complaining of a headache. Tr. 1767. She reported a history of migraines. Tr. 1767. She was

---

[2] Ramos only challenges the ALJ's "fail[ure] to consider how [Ramos's] continuous emergency rooms visits and hospitalizations would limit her ability to sustain competitive work." Doc. 8, at 1. I have therefore only included in this report and recommendation a discussion of Ramos's emergency room visits and hospitalizations.

treated and discharged home. Tr. 1770.

On January 31, 2023, Ramos was admitted to the hospital for depression with a suicide attempt. Tr. 942. On February 2 she was discharged from the mental health unit, Tr. 966, but moved to another unit due to low blood pressure "in the setting of recent p[s]ychiatric medication changes." Tr. 898. The provider noted that due to an abnormal urinalysis, Ramos should remain hospitalized for further observation. Tr. 894. Ramos was discharged home on February 6. Tr. 893–94.

Later in February 2023, Ramos went to the hospital complaining that she felt lightheaded. Tr. 1506. She said that she had recently re-started her blood pressure medication and had taken an extra dose the night before her visit to make up for a missed morning dose. Tr. 1506, 1512. Ramos also reported a headache and said that she had run out of her migraine medication. Tr. 1506. Ramos advised that she didn't feel comfortable being discharged while feeling lightheaded, so she was admitted and discharged the next day. Tr. 1513. The provider diagnosed symptomatic bradycardia likely caused by taking an extra dose of recently started blood pressure medication and migraine due to having run out of medication. Tr. 1513.

In late April 2023, Ramos went to the emergency room for leg pain. Tr. 1355. The provider diagnosed likely sciatica. Tr. 1360. Ramos was admitted to the hospital and discharged the following day. Tr. 1362.

In August 2023, a neurologist assessed Ramos with chronic bilateral lumbosacral radiculopathy. Tr. 2052. The doctor recommended water therapy, weight loss, continued medication, follow-up visits with Ramos's providers, and that Ramos "[a]void prolonged lifting standing or sitting activities." Tr. 2052.

In late September 2023, Ramos went to the emergency room for knee pain. Tr. 2165. She stated that she was carrying heavy objects the day before the visit when she felt her knee pop. Tr. 2165. Ramos was fitted with a splint, given crutches, and discharged home. Tr. 2169.

In early November 2023, Ramos went to the emergency room for back pain. Tr. 2079. She was diagnosed with chronic midline lower back pain and right-sided sciatica, treated, and discharged home. Tr. 2093.

*State agency opinions*[3]

In February 2023, Rohini Mendonca, M.D., reviewed Ramos's record. Tr. 69–71. Regarding Ramos's physical residual functional capacity (RFC),[4] Dr.

---

[3] When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[4] An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

5

Mendonca found that Ramos could perform "light" work, that is, in an eight-hour workday she could stand and walk for no more than four hours and sit for six hours. Tr. 69. She could lift and carry twenty pounds occasionally and ten pounds frequently. Tr. 69. Dr. Mendonca also assessed postural and environmental limitations. Tr. 70. He did not assess any absenteeism limitations.

In June 2023, Carolyn Hildreth, M.D., reviewed Ramos's record and adopted Dr. Mendonca's findings, with some postural and environmental differences. Tr. 83–85. Dr. Hildreth did not assess any absenteeism limitations.

In March 2023, Bruce Lipetz, Psy.D., reviewed Ramos's record. Tr. 71–73. Regarding Ramos's mental RFC, Dr. Lipetz generally found that Ramos could understand and remember simple and detailed tasks. Tr. 71. She could sustain and carry out "simple and some lower level detailed tasks … based on skills that can be multistep, detailed," and "learned in 1–3 months, and carried out at a moderate pace." Tr. 72. Ramos could have incidental contact with the public and "social contact with co-workers and regular supervision." Tr. 72. She could adapt to the above-described work activity with "some limitations" due to Ramos's statement that her anxiety worsens in crowds. Tr. 72. Dr. Lipetz did not assess any absenteeism limitations.

In June 2023, Kevin Lauer, Ph.D., reviewed Ramos's record and generally adopted Dr. Lipetz's findings, albeit using different language. Tr. 85–87. Dr. Lauer did not assess any absenteeism limitations.

6

*Hearing testimony*

Ramos, who was represented by counsel, testified at the telephonic administrative hearing held in January 2024. Ramos testified that she lives with her grandmother. Tr. 43. Ramos has a driver's license and drives about two days a week. Tr. 44. She drives to doctors' appointments or to the grocery store. Tr. 44.

When asked what prevents her from working, Ramos stated that she has excruciating back pain. Tr. 45. She also experiences pain in her neck, hands, and sometimes her knees. Tr. 45. Medication helped. Tr. 45–46. Ramos also has "anxiety, PTSD in certain situations." Tr. 45. Due to her impairments, she can't lift heavy plates or write for very long. Tr. 50. Once or twice a month Ramos loses control of her bladder or bowels. Tr. 51. She uses a shower chair when bathing and stated that bending over to dress herself is difficult. Tr. 52.

When asked how many days in "the last year" she estimated that she had spent admitted to a hospital or psychiatric facility, Ramos answered "about 75." Tr. 52.

The ALJ asked the vocational expert to determine whether a hypothetical individual such as Ramos could perform any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 56. The vocational expert answered that such an individual could perform the following jobs: circuit board assembler, final assembler, and sorter. Tr. 56. The ALJ asked the vocational expert whether

7

his answer would change if the individual would also be absent two days per month or off-task 20 percent of the day. Tr. 57. The vocational expert answered that either of those limitations would be work-preclusive. Tr. 57.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. Claimant has not engaged in substantial gainful activity since October 13, 2022, the application date (20 CFR 416.971 *et seq.*).
>
> 2. Claimant has the following severe impairments: small right subarticular disc protrusion at L4-5 and left subarticular disc protrusion at L5-S1 with persistent severe canal stenosis and mild progression of right subarticular recess stenosis at L4-5 and radiculopathy; cervical spondylosis with varying levels of foraminal impingement, most evident at C4-5 and C5-6, right greater than left, and borderline/mild cord impingement at C4-5 without severe compression; mild right C7 radiculopathy with no active denervation; rheumatoid arthritis; essential hypertension; mild obstructive sleep apnea; obesity; depression; anxiety; borderline personality disorder; trichotillomania; and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).
>
> 3. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: can occasionally reach overhead with the right and the left; can frequently reach in all other directions with the right and the left; can frequently handle with the

8

right and the left; can frequently finger with the right and the left; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can never be exposed to unprotected heights, moving mechanical parts or operating a motor vehicle; can frequently be exposed to humidity and wetness; has the ability to understand, remember and carry out simple instructions; is able to use her judgment to make simple work related decisions; cannot perform work requiring a specific production rate (i.e. assembly line work); is able to deal with occasional changes in a routine work setting; and is able to occasionally interact with supervisors, coworkers and the public.

5. Claimant has no past relevant work (20 CFR 416.965).

6. Claimant was … 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. Claimant has at least the equivalent of a high school education (GED) (20 CFR 416.964).

8. Transferability of job skills is not an issue because claimant does not have past relevant work (20 CFR 416.968).

9. Considering claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 416.969 and 416.969a).

10. Claimant has not been under a disability, as defined in the Social Security Act, since October 13, 2022, the date the application was filed (20 CFR 416.920(g)).

Tr. 19–28.

9

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work

> experience? If so, the claimant is not disabled.
> If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by

11

substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Ramos's sole assignment or error is that the ALJ committed reversible error when he failed to "consider how [Ramos's] continuous emergency room[] visits and hospitalizations would limit her ability to sustain competitive work." Doc. 8, at 1, 9. Ramos contends that "[a]bsenteeism must be addressed when determining the employability fo[r] a disability applicant." Doc. 8, at 10 (citing *Mains v. Berryhill*, No. 1:18-cv-01380, 2019 WL 1299926, at *17 (N.D. Ohio Mar. 21, 2019)). She asserts that "the ALJ failed to undertake this required analysis." *Id*.

In *Mains*, the court wrote that, in addition to other errors the ALJ made when evaluating the treating-source opinion of Dr. Warren, "the ALJ fail[ed] to discuss Dr. Warren's opinion that Mains' pain symptoms would cause absenteeism and she would require an additional, unscheduled break during the workday." 2019 WL 1299926, at *13, 17. The court explained that "[b]ecause the ALJ did not provide any analysis in relation [to] Dr. Warren's opinion [that] Mains required an additional break and absences, this Court is unable to discern if this portion of the opinion was discounted or overlooked." *Id*. The court vacated and remanded the Commissioner's decision because the ALJ "fail[ed] to set forth good reasons for discounting the opinion of Dr. Warren." *Id*.

Here, no medical provider opined that Ramos had off-task or absenteeism limitations. So *Mains*, the only legal authority that Ramos cites in support of her assertion, isn't on point. *See also Riggio v. Comm'r of Soc. Sec.*, No. 3:22-cv-997, 2023 WL 6225093, at *2 (N.D. Ohio Sept. 26, 2023) (rejecting the claimant's argument that the ALJ's RFC assessment failed to account for absences when no medical provider opined that the claimant would have such limitations); *cf. Bell v. Comm'r of Soc. Sec.*, No. 1:22-cv-723, 2022 WL 18156676, at *11 (N.D. Ohio Nov. 29, 2022) (finding that the ALJ failed to sufficiently explain why he rejected the doctors' opinions regarding the claimant's absences), *report and recommendation adopted*, 2023 WL 130837 (N.D. Ohio Jan. 9, 2023).

Later in her brief, Ramos writes that "[a]n ALJ's unexplained failure to include [a] medical expert's absenteeism limitation in a residual functional capacity (RFC) assessment has been determined to be reversible error." Doc. 10, at 11 (citing *Carter v. Comm'r of Soc. Sec.*, No. 3:13-cv-296, 2015 WL 791473 (S.D. Ohio Feb. 24, 2015)). But here, unlike in *Carter*, there was no medical expert who assessed absenteeism (or any) limitations. Ramos submits that ALJs must "articulate" how persuasive they find each medical opinion, Doc. 10, at 11, but this unexceptional statement doesn't advance Ramos's case, since there was no medical opinion in Ramos's record that included absenteeism or off-task limitations.

Ramos says that an ALJ's decision cannot be upheld "[w]here the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." Doc. 10, at 11 (citing *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *20 (N.D. Ohio Mar. 8, 2021)). She contends that the ALJ failed to "provide a logical explanation as to how Ms. Ramos could sustain full-time work during a period where she was treated at emergency rooms on at least fifteen occasions, and spending at least 20 days as an inpatient at a hospital or psychiatric facility."[5] Doc. 8, at 11. But *White*

---

5   As the Commissioner points out, some of the transcript pages Ramos cites include emergency room visits and a hospitalization that occurred before October 13, 2022. But "[f]or purposes of [supplemental security income], which is not retroactive, the relevant period … is … the date [the claimant] filed his protective application, to … the date of the ALJ's decision." *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016) (citing 20 C.F.R. § 416.335) And Ramos filed her application on October 13, 2022. Tr. 17, 156.

14

applied this "logical bridge" test to an ALJ's faulty evaluation of medical opinions that contained absenteeism limitations. *See White*, 2021 WL 858662, at \*19–20. No medical opinions in this case contain absenteeism limitations. So *White* doesn't support Ramos's argument.

Ramos argues that the ALJ "failed to properly consider how [] Ramos's extreme body pain, chronic headaches, suicidal ideation and attempts to take her own life, would limit her capacity to be present and on-task at any job." Doc. 8, at 10. But the ALJ considered Ramos's impairments and her emergency treatment. Tr. 23–26. And, as the ALJ stated, "[t]here is no opinion in evidence from any medically acceptable source that [Ramos] has any greater work related physical or mental limitations" than the ALJ's RFC. Tr. 27. Ramos has not cited legal authority that requires an ALJ to explain why he did not include in the RFC assessment a limitation that no medical provider assessed.

Moreover, the ALJ explained that Ramos's headaches improved with medication. Tr. 24. The ALJ found that Ramos's mental health conditions improved with medication and therapy, that her January 2023 hospitalization was due to worsened depression from a family member's recent death, and that Ramos had twice been discharged from treatment for failing to return or lack of attendance. Tr. 24–26; *see Riggio*, 2023 WL 6225093, at \*3 (affirming the ALJ's decision, observing that it included evidence showing improvement and that the claimant's mental-health hospitalizations "often coincided with" treatment non-compliance and external stressors). As for chronic pain, the ALJ

15

discussed Ramos's imaging results and largely normal physical exam findings (including during emergency room visits). Tr. 23–26. The ALJ commented that Ramos's neurologist had three times recommended water therapy for pain control, Tr. 24–26, which the record does not indicate Ramos followed. And the ALJ found that Ramos's "statements about the intensity, persistence, and limiting effects of her symptoms" lacked "support in contemporaneous treatment documentation or elsewhere in the record." Tr. 23. Ramos does not challenge any of these findings.

All told, Ramos has not shown that the ALJ erred.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: November 24, 2025

　　　　　　　　　　　　　　　　*/s/ James E. Grimes Jr.*
　　　　　　　　　　　　　　　　James E. Grimes Jr.
　　　　　　　　　　　　　　　　U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).